UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUAN GABRIEL CARDENAS,

                Petitioner,

-vs-                                      Case No.  8:03-cv-762-T-17MAP

ROBERT O'CONNOR, WARDEN,

                Respondent.

_____

## **ORDER**

THIS CAUSE was initiated upon the filing of a Petition for Writ of Habeas Corpus by Petitioner Juan Gabriel Cardenas (Cardenas).  Cardenas challenges his conviction and sentence entered by the Circuit Court for the Twelfth Judicial Circuit, Manatee County, Florida.

BACKGROUND

On April 15, 1999, Petitioner was charged in a felony information with one count of Second Degree Murder. (Exhibit 9,  R 6-7).[1]  The information alleged that Cardenas, by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, killed Julie Laible by dropping and/or throwing a rock onto her. A jury trial was held before the Honorable Charles E. Williams, Circuit Judge, on April 24-27, 2000. The

_____

[1] Citations are to Exhibits filed by the Respondent.

jury found Cardenas guilty as charged. On May 26, 2000, the state trial court sentenced

Cardenas to life in prison. (Exhibit 9,  R 168-173)

Cardenas appealed.  The Special Assistant Public Defender appointed to represent

him filed an initial brief (Exhibit 1) raising the following three issues:

ISSUE I

THE TRIAL COURT ERRONEOUSLY DENIED A MOTION FOR JUDGMENT OF ACQUITTAL; APPELLANT'S ACT OF DROPPING A ROCK FROM AN INTERSTATE (1-75) OVERPASS, WHICH HIT A CAR AND KILLED THE DRIVER WAS INDIFFERENT TO HUMAN LIFE, BUT APPELLANT HAD NO ILL WILL, SPITE OR HATRED TOWARDS THE UNKNOWN VICTIM AND THIS ACT WAS NOT SECOND DEGREE MURDER PURSUANT TO STATE V. ELLISON, 561 So.2d 876 (Fla. 1990).

ISSUE II

THE TRIAL COURT ERRONEOUSLY DENIED THE MOTION FOR JUDGMENT OF ACQUITTAL: THERE WAS INSUFFICIENT EVIDENCE TO REBUT THE REASONABLE HYPOTHESIS THAT APPELLANT DID NOT DROP THE ROCK THAT KILLED THE VICTIM.

ISSUE III

THE TRIAL COURT ERRONEOUSLY DENIED THE MOTION TO EXCLUDE GRUESOME AUTOPSY PHOTOGRAPHS: SUCH PHOTOGRAPHS WERE NOT RELEVANT AND THE PREJUDICIAL EFFECT OF THE PHOTOGRAPHS OUTWEIGHED THE PROBATIVE VALUE OF THE EVIDENCE.

The state district court of appeal per curiam affirmed the judgment and conviction

on June 6, 2001.  Cardenas v. State, 790 So.2d 413 (Fla. 2d DCA 2001) [Table].

On August 1, 2002, Cardenas signed a Rule 3.850 Motion for post-conviction Relief.

(Exhibit 5).  Cardenas raised three allegations of ineffective assistance of trial counsel in

that motion: (1) counsel was ineffective for failing to move for change of venue; (2) counsel

-2-

was ineffective for failing to challenge for cause or strike a juror who had a fixed opinion of guilt; (3) counsel was ineffective for failing to request a jury instruction on permissive lesser included offense.

On September 12, 2002, the state trial court, after applying the analysis for resolving claims of ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668 (1984), summarily denied all three claims on their merits.   As to ground three, the only issue  pertinent to the claims in the present federal petition, the state trial court made the following findings and conclusions:

> Defendant alleges that his counsel was ineffective for failing to request a jury instruction on the permissive lesser-included offense of throwing deadly missiles into dwellings, buildings, vessels, vehicles, etc. See 790.19, Fla. Stat. Defendant contends that he asked counsel to  request  an instruction on this lesser-included offense,  but counsel declined to request it because "it was not permitted." Defendant argues that had counsel requested the instruction, it would have allowed the jury to exercise its "pardon power" because the theory of the defense was that he had thrown rocks from the overpass, but he was not the one who threw the rock that caused the death of the victim.

> Defendant was charged with second-degree murder, to wit, that between March 27 and March 28, 1999,

> > he did unlawfully, by act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, kill one JULIE LAIBLE by dropping and/or throwing a rock onto her, contrary to Section 782.04(2), Florida Statutes . . .

> (See Information - Count I) In contrast, section 790.19, defining the crime of shooting into or throwing a deadly missile into an occupied vehicle states in relevant part that "Whoever, wantonly or maliciously . . . throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any . . . vehicle of any kind which is being used or occupied by any person shall be guilty of a felony of the second degree.

-3-

The Defendant contends that a violation of section 790.19 is a permissive lesser- included offense of second-degree murder. This crime, however, is not included on the Schedule of Category 1 or Category 2 Lesser included Offenses for second-degree murder contained in the 1999 edition of Florida's Standard Criminal Jury Instructions. See West's Florida Criminal Laws and Rules (1999 ed.).

A trial court is required to grant a request for a permissive lesser-included offense only if: "(a) the accusatory pleading specifically alleges all the statutory elements of the lesser offense; and (b) a finding of guilt on the offense would be supported by the evidence submitted at trials Wilson v. State, 749 So.2d 516 (Fla. 5th DCA 1999) (citing State v. Wimberly, 498 So.2d 929, 931 (Fla. 1986). In this case, the Defendant's claim fails the first prong of the test. He claims that the Information alleges the statutory elements of the lesser offense, but the Defendant mistakenly equates the elements of "knowingly and maliciously" under section 790.19 with the element of "imminently dangerous to another and evincing a depraved mind" under section 790.19 [sic]. The definitions of these elements under the Florida Standard Criminal Jury Instructions are distinctly different, and it is clear that the Information did not specifically allege the element of "knowingly and maliciously" in  this case. Nor, as the Defendant urges, did the State argue that the Defendant knowingly and maliciously committed this crime. Rather, the State quite clearly argued that the Defendant committed his crime in a depraved state of mind and with ill will. (T.T. 868-876; 931-933).

The Defendant also fails to demonstrate any prejudice as a result of his counsel's failure to request this alleged lesser-included offense. Notably, counsel did argue for an instruction on culpable negligence,[2] a second-degree misdemeanor, but the Court denied this request. (T.T. 862-863). Moreover, the jury was instructed on the lesser-included offense of manslaughter by culpable negligence, a second-degree felony (same degree of felony as Defendant's alleged requested permissive lesser-included offense of throwing a deadly missile). (T.T. 962-965). Under this instruction, the jury could have, as the Defendant alleges, exercised its "pardon power" to determine that his conduct did not show a depraved mind but, rather, was wanton, reckless, or grossly careless, and committed with an utter disregard for the safety of others. Again, however, the jury, based on the evidence presented, did not exercise any pardon power, but convicted him of the crime charged. Quite simply, the Defendant has failed to

---

[2] Section 784.05 provides that whoever, through culpable negligence, exposes another person to personal injury commits a misdemeanor of the second degree. See § 784.05, Fla. Stat. (1999).

demonstrate any error by counsel in failing to request such an instruction or that he was prejudiced thereby.

(Order Denying Defendant's Motion for Postconviction Relief, Exhibit 6, at pp. 5-7)

Cardenas appealed the order denying Rule 3.850 relief.  On March 26, 2003, in Case No. 2DO2-4641, the state district court of appeal per curiam affirmed  the state trial court's denial of relief. (Exhibit 7). Cardenas v. State, 845 So.2d 193 (Fla. 2d DCA 2003)[Table].  Cardenas signed the present federal petition on April 22, 2003, and timely filed the petition April 25, 2003,  raising the following three grounds for relief:

### Ground One

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION  FOR   A SECOND  DEGREE  MURDER  AND  NOT  MANSLAUGHTER, WHERE EVIDENCE FAILED TO SATISIFY A CONVICTION OF SECOND-DEGREE MURDER.[3]

### Ground Two

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE IN CLOSING ARGUMENT THAT THE DEFENDANT WAS ONLY GUILTY OF A LESSER INCLUDED OFFENSE OF MANSLAUGHTER, AND NOT SECOND-DEGREE MURDER, AFTER COUNSEL FAILED TO PRESENT MITIGATING FACTORS TO THE JURY.

### Ground Three

FAILURE OF THE PROSECUTION TO DISCLOSE TO THE DEFENDANT EVIDENCE FAVORABLE TO THE DEFENDANT.

## STANDARDS OF REVIEW

---

[3] Although Cardenas phrases his claim as "Conviction obtained by the violation of the privilege against self-incrimination," it appears that he is actually arguing that the evidence (including his inculpatory statements) was insufficient to support the conviction for second-degree murder.

Because Cardenas filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). AEDPA is relevant to a review of this Petition.

## A.

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).[4]

---

[4] O'Sullivan v. Boerckel, 526 U.S. at 845, suggests a shift by the United States Supreme Court with regard to the terminology used in discussing exhaustion principles. The majority of the [O'Sullivan] Court concluded that an issue that was not properly presented to the state court, and which can no longer be litigated under state procedural rules, did not satisfy the exhaustion requirement, and is procedurally barred from federal review. 526 U.S. at 839-840, 848. As noted by the dissenting opinion, prior case law characterized issues for which no vehicle existed for state court litigation to be exhausted but procedurally barred. 526 U.S. at 850, 852; see Coleman v. Thompson, 501 U.S. 722, 732 (1991); Engle v. Isaac, 456 U.S. 107 (1982); Picard v. Connor, 404 U.S. 270 (1971).

(continued...)

See also, Henderson v. Campbell, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Snowden v. Singletary, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing O'Sullivan, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  O'Sullivan, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice

---

[4](...continued)
There are no unexhausted claims in Cardenas's petition that can still be litigated in state court. If a claim is procedurally barred, federal review is precluded by virtue of that bar, and the exhaustion, or lack of exhaustion, is irrelevant. O'Sullivan, 526 U.S. at 848.

exception is applicable." <u>Smith v. Jones</u>, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." <u>Henderson v. Campbell</u>, 353 F.3d at 891(quoting <u>Judd v. Haley</u>, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. <u>Henderson v. Campbell</u>, 353 F.3d at 892; <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice,"  Cardenas must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Hollis v. Davis</u>, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). Cardenas must show that there is at least a reasonable probability that the result of the proceeding would have been different. <u>Henderson v. Campbell</u>, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Henderson v. Campbell</u>, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of

someone who is actually innocent." Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Schlup 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

### No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman, 501 U.S. 722,  735-36 (1991);  Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

**B.**

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

## C.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

## D.

## Ineffective Assistance of Counsel Claims

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687-88; see also, Wiggins v. Smith, 123 S.Ct. 2527 (2003); Williams v. Taylor, 529 U.S. 362 (2000).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  Id. at 477.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90; Bell v. Cone, 535 U.S. 685, 698 (2002).  Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir. 2001); Meeks v. Moore, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination.  Parker v. Head, 244 F.3d at 835-837.  "[T]he Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims."  Williams, 529 U.S. at 391.

**E.**

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>McCullough v. Singletary</u>, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 6-8 (1982).

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in <u>Chapman v. California</u>, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637. Although no constitutional error has occurred in Cardenas's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

DISCUSSION

A review of the record demonstrates that, for the following reasons, the petition for writ of habeas corpus must be **DENIED**. Cardenas is not entitled to relief on any of the grounds because Grounds Two and Three are unexhausted and procedurally barred and Ground One, to the extent it is exhausted and states a federally cognizable claim, fails to meet the threshold requirements of 28 U.S.C. § § 2254 (d) and (e).

-14-

Ground One

Cardenas claims the state trial court erred in allowing a conviction for second degree murder and not manslaughter, where the evidence failed to satisfy a conviction of second degree murder. Specifically, Cardenas alleges the evidence failed to show whether the victim's death was caused by Cardenas's conduct rather than that of his co-defendants, Dominguez and Ramirez. Cardenas contends that "(1) the evidence against him was purely circumstantial and that it equally suggested that either one of his co-defendants could have killed the victim; (2) the only direct evidence involving conduct of guilt was a self - incriminating taped statement made by the defendant; and, (3) the evidence was not competent and substantial to allow the Jury to conclude beyond a reasonable doubt, that the defendant was responsible for the victim['s] death." (See Memorandum In Support Of Federal Habeas Corpus Petition at p. 5).

On direct appeal, Cardenas argued that the state trial court erroneously denied the motion for judgment of acquittal where there was insufficient evidence to rebut the reasonable hypothesis that Cardenas did not drop the rock that killed the victim. To that extent, then, Ground One is exhausted. However, Cardenas is not entitled to relief on this claim.

In a federal habeas case, the test for sufficiency of the evidence is whether any rational trier of fact could have found the elements of a crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the government. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The statute governing murder in the second degree, Section 782.04(2), Florida Statutes (2003), provides in relevant part:

-15-

The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree. . . .

The Florida Standard Jury Instruction for murder in the second degree provides as follows:

An act is one "imminently dangerous to another and demonstrating a depraved mind regardless of human life" if it is an act or a series of acts which

1. a person of ordinary intelligence would know is reasonably certain to kill or do serious bodily injury to another;

2. is done from ill will, hatred, spite or an evil intent, and

3. is of such a nature that the act itself indicates an indifference to human life.

In Florida, second degree murder does not require premeditation, but only requires a depraved mind. A depraved mind is shown when the victim is killed out of malice, ill will, hatred, spite or evil intent. See Redman v. Dugger, 866 F.2d 387, 389 (11th Cir. 1989) (citing Manuel v. State, 344 So. 2d 1317 (Fla. 2d DCA 1977), cert. dismissed, 355 So.2d 515 (Fla. 1978)). In the present case, the evidence adduced at trial was sufficient to support Cardenas' conviction, and a rational juror could have found proof beyond a reasonable doubt.

The facts adduced at trial showed that close to midnight on March 27, 1999, Cardenas, along with three cohorts, decided to have fun by throwing or dropping rocks onto Interstate 75 from three different overpasses near Ellenton, Florida. The three young men, upon Cardenas' urging, located a supply of small rocks and large boulders near a culvert. Then, a friend drove Cardenas' truck while Cardenas and Noe Ramirez sat in the bed of

the truck. Cardenas and Ramirez dropped rocks from the overpasses as vehicles traveled below. At the second overpass, several cars suffered flat tires from the rocks scattered on the highway.

At the third overpass, at Ellenton-Gillette Road, Cardenas dropped a large rock (10" to 12" in diameter), and heard the rock hit a car. (Vol. 5;  T 718, 729).[5]  The four men then left the scene and went home. During his interview with investigators, Cardenas told police that he knew someone would get hit sooner or later. (Vol. 5; T 729-730). Cardenas said he always threw the rocks off the side of the bridge overpass where he could see traffic coming.   (Vol.5; T 731). The facts show that Cardenas deliberately dropped rocks of increasingly larger sizes from three different overpasses  onto vehicles as they traveled on the interstate below.  At the third overpass, Ellenton-Gillette Road, Cardenas dropped a 22 pound rock which shattered the windshield of Julie Laible's car, struck Miss Laible's face with a force of approximately 1,500 pounds, and caused her instantaneous death. (Vol. 7; T 686-687) Cardenas admitted to law enforcement that he dropped rocks from all three overpasses. (Vol. 7; T 717, 725). Moreover, Cardenas's own statements to police and other testimony presented by the State showed that it was Cardenas, and not a co-defendant, who dropped the rock from the Ellenton-Gillette overpass, killing Ms. Laible. (Vol. 4; T 544; Vol. 7; T 725)

The  facts in Cardenas' case are analogous to those in Hooker v. State, 497 So. 2d 982 (Fla. 2d DCA 1996). In Hooker, the defendant shot deliberately into a trailer he knew

---

[5] Citations to the record are indicated by the volume number, following by "T" and the page number in the upper right hand corner of the trial transcript.

to be occupied without knowing who, exactly, was inside. He shot and killed one of the occupants. It does not matter that Cardenas was unaware of who, exactly, he was striking when he dropped boulders onto the fast-moving traffic below him, just as it was of no consequence that the defendant in <u>Hooker</u> did not know whom, exactly, he might strike with the bullets he shot into the occupied trailer. It is enough that Cardenas had reason to believe that the vehicles on which he dropped the rocks were occupied, and that his actions were likely to kill or cause serious bodily injury. <u>Conyers v. State</u>, 569 So. 2d 1360 (Fla. 1st DCA 1990). The jury could reasonably reject Cardenas' defense that it was a co-defendant, and not Cardenas, who actually threw the rock on the victim's automobile. First, there was ample evidence to support a finding that Cardenas alone was the person who dropped the rock. There was direct evidence from Antonio Hernandez that Cardenas dropped the large rock from the Ellenton-Gillette overpass that struck the victim's car with a loud bang. (Vol. 4; T 544). Under Florida law, this testimony, even though it was in dispute, was sufficient to justify the trial court's denying Cardenas' motion for judgment of acquittal. <u>Wallace v. State</u>, 764 So. 2d 758 (Fla. 2d DCA 2000) .

The standard of review is whether the trial court abused its discretion. <u>Cox v. State</u>, 764 So. 2d 711 (Fla. 1st DCA 2000) The State presented substantial competent evidence to support the state trial court's ruling; even if that evidence were disputed, it is still proper for the trial court to deny a motion for judgment of acquittal because it is the jury's responsibility, not the trial court's, to resolve issues where the evidence is in dispute.

Second, even if the State had been unable to establish that it was Cardenas who dropped the rock, the jury nevertheless could have convicted Cardenas of second degree

murder on the principal theory.  If one concludes that both Cardenas and Noe Ramirez, acting in concert, dropped rocks from the Ellenton-Gillette Road overpass at about the time the victim's car was hit, it is a reasonable inference that one of those rocks penetrated the windshield of Julie Laible's car and killed her. Consequently, the state trial court could conclude that a prima facie case had been presented with Cardenas' acting either as the sole responsible party, or as a principal. Melgares v. State, 762 So. 2d 921 (Fla. 3rd DCA 1999). In order to show that Cardenas was a principal in the crime, it was necessary to show that Cardenas intended that the crime be committed and that he did some act to assist his co-defendant in actually committing the crime. Staten v. State, 519 So.2d 622 (Fla. 1988).  In this case, all the evidence supported a finding that Cardenas was the instigator of the tragic events and was an equal, if not sole, participant in the murder of Julie Laible.

Ground One does not warrant habeas corpus relief.

Ground Two

Cardenas claims his trial counsel was ineffective for failing to argue in closing argument that Cardenas was only guilty of the lesser included offense of manslaughter and not second degree murder, after counsel failed to present mitigating factors to the jury. Cardenas alleges counsel should have argued that Cardenas' actions were mitigated by the fact that he cooperated with authorities and the State Attorney's private investigator. (Memorandum of Law at p. 13).

This assertion was not raised in Cardenas's Rule 3.850 motion and is now procedurally barred.[6]   The courts of Florida must be given an opportunity to consider Cardenas' legal theory of constitutional deficiency and the factual basis for that theory. Picard v. Connor, 404 U.S. 270, 277 (1971). Cardenas's factual allegation constitutes a new allegation of ineffectiveness of counsel which is procedurally barred by the two-year limit of Rule 3.850. Whiddon v. Dugger, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of Rule 3.850), cert. denied, 498 U.S. 834, (1990)) , and by the state's successive petition doctrine. See Pope v. State, 702 So. 2d 221, 223 (Fla. 1997) (successive postconviction relief motions filed after the expiration of the time limit must be based on newly discovered evidence).   If Cardenas asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court.  Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992); Jackson v. Herring, 42 F.3d 1350, 1355 (11th Cir.), reh'g denied, 51 F.3d 1052 (11th Cir. 1995).

Cardenas has not shown cause and prejudice to overcome the procedural bar and Ground Two does not warrant habeas corpus relief.

Ground Three

Cardenas asserts that the state trial court erred by waiving Cardenas' right to a presentence investigation report (PSI) prior to sentencing. Again, this issue was not raised in state court in Cardenas' direct appeal or in the motion for postconviction relief. Cardenas

---

[6] In his motion for pot-conviction relief in the state trial court, Cardenas had argued in ground three that his counsel was ineffective for failing to request a jury instruction on the permissive lesser included offense of throwing a deadly missile into a dwelling or vehicle.

concedes as much in his federal petition. (Petition at p. 7).  Cardenas is not entitled to relief on Ground Three for at least two reasons.

First, Cardenas fails to state a claim of federal constitutional magnitude. The issue of whether the state court abides by the state's own sentencing procedural rules in no way implicates rights guaranteed to Cardenas by the United States Constitution. A state's interpretation of its own rules or statutes does not raise a federal constitutional issue, Wainwright v. Goode, 464 U.S. 78 (1983), reh'g denied, 465 U.S. 78 (1984). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Federal habeas relief is available to correct only those injuries resulting from a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (citing Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)).

Second, this claim was not presented to the state courts for resolution in any proceeding and is thus unexhausted and procedurally barred. Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless Cardenas can demonstrate cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually

innocent" contemplated in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). Cardenas has not done so.

Ground Three does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Cardenas' petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Cardenas and to close this case.

ORDERED in Tampa, Florida, on  July 6, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record

Juan Gabriel Cardenas